UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

VALERIA JANE SMALL,                                                Case No. 11-00384

    Debtor.

VALERIA JANE SMALL,

    Plaintiff,

v.                                                                                          Adv. Proc. No. 11-00169

SETERUS, INC., et al.

    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S MOTION TO DISMISS**

Donald J. Stewart, Attorney for JPMorgan Chase Bank, National Association, Mobile, Alabama
James D. Patterson, Attorney for Debtor, Mobile, Alabama

This case is before the Court on JPMorgan Chase Bank, National Association's ("Chase") Motion to Dismiss. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. The Court has the authority to enter a final order pursuant to 28 U.S.C. § 157(b)(2). For the reasons indicated below, Chase's Motion to Dismiss is GRANTED in part and DENIED in part.

FACTS

On August 30, 2011 the Debtor filed an adversary proceeding naming Chase, Seterus, Inc. f/k/a Lender Business Process Services ("Seterus" or "LBPS"), and Federal National Mortgage Association ("Fannie Mae") as defendants. The facts, as alleged in the Debtor's complaint, are as follows:

1

1. In January 2007, the Plaintiff executed a real estate mortgage with Chase for $92,500.00.

2. In November 2008, Plaintiff's father passed away and she had to take on additional bills and expenses that were not included in her budget and began to struggle with her finances. She contacted Chase about a home mortgage modification to reduce her monthly mortgage payment.

3. After completing the paperwork and sending in the requested forms, including tax returns and pay stubs, Chase agreed to a four month trial payment period at $499.82 a month with the promise of a permanent modification after successful completion of the trial period.

4. Plaintiff timely made each payment during the trial period with Chase.

5. At the end of the trial payment period, Chase had failed to contact the Plaintiff about the permanent modification terms. Plaintiff continued to make payments of $499.82 and the first payment after completion of the trial period was rejected by Chase.

6. Plaintiff contacted Chase to inquire why the payment had been rejected and was informed by the Chase agent that her modification was denied because their records reflected that Plaintiff failed to return requested documentation. Plaintiff informed the agent that she had returned all requested documentation in a pre-paid FedEx envelope by the date that was indicated on the letter she received. The Chase agent informed the Plaintiff that she would receive another modification packet to complete and return.

7. On or about June 2010, Plaintiff received the second packet containing the modification application from Chase. It was completed and returned to Chase in the prepaid FedEx envelope by the July 15, 2010 due date.

8. On or about September 22, 2010, Plaintiff received a letter from Chase informing her she had been approved for a modification and to sign and return the modification agreement. The Plaintiff signed and returned the documentation in the standard prepaid over-night envelope Chase provided. Her first payment was due on December 1, 2010 in the amount of $538.00 per month including escrow.

9. On or about October 1, 2010, the loan was transferred to LBPS.

10. On or about December 7, 2010, Plaintiff came home and found Mrs. Vaughn, an agent of LBPS, on her porch with papers addressed to the Plaintiff. After reviewing the documents, Plaintiff discovered that her loan with LBPS was in default.

11. Plaintiff immediately spoke with an agent of LBPS by phone named Renata and informed her that she had received a modification from Chase and her first payment for December 1 under the terms of her new agreement had already been sent in, therefore she could not be past due.

12. The agent of LBPS informed the Plaintiff that Chase had denied her modification and LBPS was foreclosing on the home. The foreclosure sale was set for January 3, 2011.

13. Plaintiff never received a Notice of Foreclosure by mail from LBPS or Chase. The only notice she received regarding the sale date was made over the phone by the LBPS agent.

14. LBPS stated to the Plaintiff that she could apply for a loan modification through LBPS and Plaintiff said she would call LBPS back after speaking with Chase.

15. Plaintiff contacted Chase and spoke to an agent about the denial of her modification but was informed by the agent her loan modification was not denied. The agent

3

Case 11-00169    Doc 34    Filed 06/12/12    Entered 06/12/12 15:31:12    Desc Main
Document      Page 3 of 11

could provide no further information regarding her loan and the Plaintiff would have to speak directly with LBPS as Chase was not the current mortgage company.

16. During the month of December 2010, the Plaintiff made numerous calls to LBPS to attempt a resolution to the modification problem and to stop the pending foreclosure. Finally, LBPS agreed to postpone the foreclosure from January 3, 2011 until February 3, 2011.

17. On or about January 4, 2011, Plaintiff applied for a loan modification with LBPS as she was left with no other option as both Chase and LBPS refused to provide her any additional details about the signed loan modification agreement from September 2010.

18. During the month of January, Plaintiff continuously called LBPS to check on the status of her modification and spoke to numerous agents that provided her conflicting information about the loan modification each time.

19. On or about February 1, 2011, Plaintiff contacted LBPS to check the status of the loan modification and was told over the phone that her modification was denied and was not provided a reason for the denial. Plaintiff had not received a letter from LBPS by mail regarding the loan denial and only knew about the denial because of her calls to LBPS.

20. On February 2, 2011, Plaintiff was forced to initiate Chapter 13 bankruptcy proceedings to prevent the foreclosure sale of her home which was scheduled for February 3, 2011.

21. On or about July 14th 2011, through Plaintiff's bankruptcy counsel, Seterus provided a loan modification with different terms and conditions than her previous permanent modification with Chase.

22. Due to her claims based on the allegations in this complaint, Plaintiff is in no position to accept or deny the modification offered by Seterus at this time.

4

23. On information and belief, Defendants negligently, wantonly, and/or willfully failed to take action to use payment funds to satisfy monthly mortgage payments as they came due.

24. Defendants negligently, wantonly, fraudulently, and in violation of the fiduciary duties owed by Defendants to Plaintiff, failed to communicate any further with Plaintiff and failed to pursue any disposition of this mortgage to the great detriment of Plaintiff.

Based on those facts, the Debtor asserts six causes of action against the defendants: (1) wrongful foreclosure, (2) negligence, (3) wantonness, (4) breach of mortgage agreement, (5) defamation, and (6) breach of fiduciary duty. Chase filed a motion to dismiss arguing that, as to Chase, the Debtor's complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012.

LAW

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must contain sufficient factual allegations to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The asserted claim must state facts demonstrating the facial plausibility of a cause of action such that a court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the merits of a Rule 12(b)(6) motion, the Court must assume that all factual allegations set forth in the complaint are true. *See, e.g. Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002). Because all factual allegations are taken as true, the failure to state a claim for relief presents a purely legal question. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1269 n.19 (11th Cir. 2009).

5

The Debtor asserts six causes of action against Chase and the other defendants. The motion to dismiss and subsequent responses only specifically address the first five causes of action alleged by the Debtor, leaving the sixth cause of action, breach of fiduciary duty, undisturbed. Nonetheless, in its request for relief, Chase requests that this Court dismiss the Debtor's complaint, as against Chase, in its entirety. With this in mind, the Court will address the six causes of action asserted by the Debtor independently.

Count I – Wrongful Foreclosure

Pursuant to Alabama law, "[a] mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Hardy v. Jim Walter Homes, Inc.*, 2007 WL 174391, at *6 (S.D. Ala. January 18, 2007) (quoting *Reeves Cedarhurst Development Corp. v. First American Federal Sav. and Loan Ass'n*, 607 So.2d 180, 182 (Ala. 1992)). The facts alleged in the Debtor's complaint explain that the Debtor's loan was transferred from Chase to LBPS on October 1, 2010. Thereafter, it is alleged that LBPS informed the Debtor that it, not Chase, was foreclosing on the home. Indeed, the "Notice of Mortgage Foreclosure" reproduced by the Debtor in its complaint does not mention Chase in any capacity. The Notice was published in December of 2011 and the foreclosure sale was scheduled in January of 2012. Based on those allegations, Chase had no involvement with the foreclosure proceedings associated with the Debtor's home. Further, even if such involvement were present, the complaint does not allege facts indicating that the use of the power of sale in the mortgage was for an improper purpose as required by Alabama law. At oral argument, the Debtor conceded that her wrongful foreclosure claim was not very strong under the facts of this case. Nonetheless, the Debtor argued that Chase's actions put the Debtor in default and, as a result, indirectly contributed to the institution of foreclosure

6

proceedings. The connection between allegedly placing the Debtor in default and the institution of foreclosure proceedings by a separate party is far too tenuous to support a meritorious wrongful foreclosure action. The Debtor's Count I is dismissed as to Chase.

### Count II and III – Negligence and Wantonness

The Debtor's negligence and wantonness claims derive from the same general allegations: "Defendants have been negligent or wanton in its servicing of [Debtor's] mortgage…includ[ing]…its failure to accurately account for the payments made by [Debtor] and to apply the funds and its imposition of charges which it knew or should have known were in violation of its agreement with [Debtor]." The Debtor also asserts that Defendants' attempts to foreclose on the property constitute negligent or wanton conduct.

The Debtor's tort claims derive from duties created by the mortgage agreement, contractual duties. Chase's duties to accurately account for and apply the funds paid by the Debtor arise from the initial loan agreement or from a contract modifying the initial loan agreement, to the extent such an agreement exists. Chase's duties to the Debtor with regard to servicing her account did not derive from a general duty of reasonable care. For this reason, "Alabama law does not recognize a tort-like cause of action for the breach of a duty created by a contract" and, moreover, "does not recognize a cause of action for negligent or wanton mortgage servicing." *Blake v. Bank of America, N.A.*, 2012 WL 607976, at *3-*4 (M.D. Ala. February 27, 2012); *McClung v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 1642209, at *7-*8 (N.D. Ala. May 7, 2012). Therefore, the Debtor's Counts II and III, as to Chase, are dismissed.

## Count IV – Breach of Mortgage Agreement

The Debtor alleges that "the acts and omissions made by Defendants in connection with management of [Debtor's] account and the conducting of the purported foreclosure sale constitute a breach of [Debtor's] mortgage agreement." In Alabama, a breach of contract claim requires: (1) a valid contract that is binding on the parties to the action, (2) the plaintiff's performance under the contract, (3) the defendant's nonperformance, and (4) damages. *Poole v. Price*, 61 So.3d 258, 274 (Ala. 2010).

As an initial matter, no factual allegations support that Chase participated in or conducted the "purported foreclosure sale;" thus, Chase could not have breached the mortgage agreement based on any actions connected to the foreclosure sale. Nonetheless, this Court must decide whether the Debtor has asserted facts in its complaint sufficient for this Court to infer that Chase breached a mortgage agreement with the Debtor. From the face of the complaint, two potential agreements are apparent. First, the initial mortgage agreement between Chase and the Debtor, executed in January of 2007, is undoubtedly an agreement between the parties. However, the Debtor makes no factual allegations regarding specific provisions of that agreement that Chase violated through its "acts or omissions."

Second, the Debtor alleges that she entered into a modification agreement with Chase and that Chase breached that agreement. Specifically, the Debtor alleges that she requested a modification with Chase and that Chase agreed to a four month trial payment period. She alleges that she understood that a permanent modification would follow successful completion of the trial period. The facts indicate that the Debtor made all of the payments under the trial period and that she mailed to Chase all of the documentation it requested in regard to the modification. She also claims that she received a letter from Chase on September 22, 2010 informing her that

8

she had been approved for the modification and instructing her to sign and return the modification agreement. The Debtor alleges that she complied with the request. Thereafter, the Debtor's loan was transferred to LBPS.

The Debtor's allegations with regard to the loan modification are sufficient to survive a motion to dismiss. The allegations demonstrate a modification agreement, the Debtor's compliance with the agreement, and Chase's failure to follow through with the agreement. The Debtor also asserts that she suffered compensatory damages as a result of the breach. It is true that a modification to a loan agreement must be in writing to be enforceable. Ala. Code (1975) § 8-9-2(7); *DeVenney v. Hill*, 918 So. 2d 106, 115 (Ala. 2005). However, taking the factual allegations of the complaint as true, it is reasonable to infer that the documents exchanged between Chase and the Debtor constituted a valid, written loan modification. *See Blake v. Bank of America, N.A.*, 2012 WL 607976, at *4-*5. Therefore, the Court finds that the Debtor's complaint states a facially plausible claim for breach of contract based upon the alleged loan modification.

Count V – Defamation

In support of her defamation claim, the Debtor states: "On or about the 21st day of December, 2010 in Mobile County, Alabama, the Defendants slandered the Plaintiff by Publishing a false and defamatory statement of and concerning the [Debtor]." Following that assertion, the Debtor included in the complaint the text of a "Notice of Mortgage Foreclosure Sale" involving the Debtor's residence. The Notice makes no mention of Chase. Further, the factual allegations stated in the complaint do not accuse Chase of initiating the foreclosure proceedings or publishing the Notice. The most that the Debtor alleges is that Chase indirectly caused the foreclosure by contributing to the Debtor's default on her mortgage loan. Like with

9

her wrongful foreclosure claim, the Debtor asserted at oral argument that her defamation claim was not very strong. "To establish a prima facie case of defamation [in Alabama], the plaintiff must show that the defendant was at least negligent in publishing a false and defamatory statement to another concerning the plaintiff." *Butler v. Town of Argo*, 871 So. 2d 1, 16 (Ala. 2003) (internal quotations and citations omitted). The Debtor's allegations fall well short of that standard. The Court finds that the Debtor's factual allegations regarding Chase do not state a cognizable defamation claim. Thus, the Debtor's Count V is dismissed as to Chase.

### Count VI – Breach of Fiduciary Duty

Although not addressed by the parties, the Court will consider the Debtor's sixth cause of action. The Debtor asserts that the defendants, including Chase, owed "an implied fiduciary duty of fairness and good faith as to all aspects of the mortgage agreement, including the exercise of any power of sale clause contained in the mortgage." Further, the Debtor alleges that the defendants, including Chase, breached that duty through "acts and omissions…in connection with the management of the Plaintiff's account and the conducting of the purported foreclosure sale contrary to the terms of the mortgage, as modified."

Alabama law does not recognize a general fiduciary duty owed by a mortgagee to a mortgagor. *Vision Bank v. Lanza*, 2011 WL 5190847, at *4 (S.D. Ala. 2011) (citing *Brabham v. American Nat. Bank of Union Springs*, 689 So. 2d 82, 88 (Ala. Civ. App. 1996)). One potential exception exists: "when a mortgagee forecloses a mortgage pursuant to a power, the mortgagee becomes a trustee of the debtor/mortgagor, and is bound to act in good faith and adopt all reasonable modes of proceeding in order to render the sale most beneficial to the mortgagor." *Id*. (quoting *Wood River Dev., Inc. v. Armbrester*, 547 So. 3d 844, 847 (Ala. 1989)). However, even in that circumstance, the duty to act in good faith is not a general fiduciary duty. *Id*.

In this case, the Debtor's Count six is due to be dismissed as to Chase. No general fiduciary duty arises between a mortgagee, like Chase, and a mortgagor, like the Debtor, by virtue of the mortgagee extending a mortgage loan. Therefore, no duty existed for Chase to breach. Further, the only potential exception, involving the exercise by a mortgagee of a power of sale, does not apply to Chase because the facts alleged do not indicate that Chase had any involvement with any of the foreclosure proceedings regarding the Debtor's home.

THEREFORE IT IS ORDERED

1. Chase's Motion to Dismiss is GRANTED as to Counts I, II, III, V, and VI of the Debtor's complaint.

2. Chase's Motion to Dismiss is DENIED as to Count IV of the Debtor's complaint.

3. This matter is set for trial on July 24, 2012 at 10:00 am.

Dated:   June 12, 2012

*Margaret A. Mahoney*
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE